IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GENKA POPOV, an individual,

    Plaintiff,

v.            CIVIL ACTION NO. 3:18-0296

UNIVERSITY PHYSICIANS & SURGEONS, INC.,
LONG TERM DISABILITY PLAN, an employee Welfare Benefit Plan;
THE NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY, a Wisconsin Corporation; and
DOES 1 through 5, inclusive,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the Motions for Summary Judgment submitted by Defendants University Physicians & Surgeons, Inc., Long Term Disability Plan (the "Plan") and Northwestern Mutual Life Insurance Company ("Northwestern"),[1] and Plaintiff Genka Popov.[2] Plaintiff alleges, in her complaint, claims against Defendants under only one cause of action: violation of § 502 (a)(1)(B)[3] of the Employee Retirement Income Security Act ("ERISA"). *See Compl.*, ECF No. 1, at 6.

Defendants now move for summary judgment on the single count Plaintiff has asserted against them, arguing that Northwestern's decision to deny Plaintiff's claim for benefits is entitled to deference, and its findings should not be disturbed because of the reasonableness of its investigation. *See Mem. in Supp. of Defs.' Mot. for Summ. J.*, ECF No. 14, at 18–24. Plaintiff also

---

[1] ECF No. 13.
[2] ECF No. 12.
[3] The mirror civil enforcement provision is 29 U.S.C. § 1132 (a)(1)(B).

moves for summary judgment on its single count, arguing that Defendant Northwestern is biased, failed to consider some of her injuries, and was incorrect in determining that she is not entitled to benefits. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, ECF No. 12, at 8–17.

The parties have fully briefed the issues and the motions are now ripe for adjudication. As explained below, the Court **GRANTS** Defendants' Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

**I. Background**

Plaintiff worked for Marshall Health as a pathology technician, preparing tissue slides. *See* ECF No. 11-2, at 186, 192–93. She ceased work on April 18, 2016, and sought disability benefits under the Plan based on complaints of carpal tunnel syndrome, neck pain, and back pain. *See id.* at 166, 180, 184. Defendant Northwestern evaluated her medical records, consulted with a physician, and determined that the medical testing and clinical examination findings failed to support that Plaintiff satisfied the Plan's definition of a "Disability." *See id.* at 160–63.

On February 2, 2017, Plaintiff, through counsel, timely submitted an administrative appeal of Defendant Northwestern's denial of her claim. *See id.* at 147. In her appeal, for the first time, Plaintiff also claimed to be disabled from a broken arm and other injuries sustained in a fall during European travel on July 29, 2016, more than three months after she stopped working for Marshall Health. *See id.* at 147–151. Defendant Northwestern upheld its decision to deny her claim for multiple reasons. *See id.* at 126–135. Most relevant, Defendant Northwestern found that, under the terms of the Plan, Plaintiff's coverage terminated when she stopped working and ceased to be a participating member, and thus her injuries from the July 29, 2016, incident were irrelevant. *See id.* at 133.

On May 2, 2017, more than one month after Defendant Northwestern's appellate determination, Plaintiff faxed to Defendant Northwestern a letter from Marshall Health, dated April 6, 2017. *See id.* at 122. In the letter, Marshall Health stated that Plaintiff's employment terminated August 1, 2016, and that her "employer paid Long Term Disability benefit, through North Western Mutual, ended as of 08/31/2016." *See id.* at 123. Plaintiff did not request further administrative review of her claim, and filed a complaint the following day, May 3, 2017, in the Southern District of West Virginia Case. *See Compl.*, at 5.

Defendant Northwestern then initiated and agreed to further administrative review of Plaintiff's ongoing eligibility for coverage under the Plan at the time of her fall on July 29, 2016. *See Compl.*, at 5; ECF No. 1-4. Plaintiff then dismissed her initial lawsuit and Defendant Northwestern proceeded with a second administrative review, limited to evaluating whether Plaintiff's Plan coverage remained in force at the time of her fall on July 29, 2016. *See* ECF No. 1-6. On September 28, 2017, Defendant Northwestern advised Plaintiff that it was upholding the determination that she was no longer covered under the Plan at the time of her fall on July 29, 2016. *See id.* Plaintiff then re-filed her lawsuit on February 12, 2018, and all parties filed their motions for summary judgment on June 12, 2018. *See Compl.*; ECF Nos. 12, 13.

## II. Standard of Review

### A. Motion for Summary Judgment

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 247–48.

**B. Administrator's Decision**

Under ERISA, courts must review an administrator's decision to deny pension plan benefits *de novo*, unless the plan itself confers discretionary authority upon the administrator "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). When an administrator possesses such discretion, courts may review the eligibility determination only for an abuse of discretion. *See id*; *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315 (4th Cir. 2001). In considering whether an administrator abused its discretion, the Fourth Circuit identified, in *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335 (4th Cir. 2000), multiple *non-exclusive* factors that a court *may* consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d at 342-43.

## III. Discussion

### A. Standard of Review Dispute

In support of her motion for summary judgment, Plaintiff acknowledges that the Plan itself confers discretionary authority upon Defendant Northwestern, but nonetheless argues that this Court should not review Defendant Northwestern's eligibility determination under an "abuse of discretion" standard. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 9. Rather, Plaintiff asserts, this Court should "adjust" the level of deference it gives to Defendant Northwestern's decision because a conflict of interest exists. *See id.* at 10. The Court disagrees, as Plaintiff's position is based on overturned caselaw.

In 2000, the Fourth Circuit held that "[a] fiduciary's conflict of interest, in *addition* to serving as a *factor* in the reasonableness inquiry, may operate to reduce the *deference* given to a discretionary decision of that fiduciary." *Booth v. Wal-Mart Stores*, 201 F.3d 335, 343 n.2 (4th Cir. 2000) (emphasis added). This reduction of deference was done to "neutralize any untoward influence resulting from that conflict." *Id.* (internal quotations omitted).

However, the Fourth Circuit—based upon the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*[4]—later *denounced* this "reduction of deference" in ERISA conflict of interest situations, and ruled that a conflict of interest is merely "one factor among many in determining the *reasonableness* of the administrator's decision exercising discretionary authority." *See Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260–61 (4th Cir. 2009) (emphasis added) (internal quotations omitted). Thus, the Court rejects Plaintiff's assertion that this Court should "adjust" its level of deference because of Defendant Northwestern's conflict of interest, as it is an outdated understanding of the law. Instead, Defendant Northwestern's conflict of interest will be just one

---

[4] 554 U.S. 105 (2008).

of the many non-exclusive factors laid out in *Booth* that this Court will consider in deciding whether it abused its discretion.

### B. Whether Defendant Northwestern's Decision was an Abuse of Discretion

Because the Court has established that Defendant Northwestern is entitled to a deferential standard of review, the only question now before this Court is whether Defendant Northwestern's decision to deny Plaintiff her benefits was reasonable, or if it was an abuse of discretion.

#### 1. Failure to Consider Evidence from July 2016

In support of her motion for summary judgment, Plaintiff first argues that Defendant Northwestern abused its discretion when it failed to consider "injuries sustained by [Plaintiff] on July 29, 2016," when Plaintiff fell and further injured herself while on vacation. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 16. Defendants argue that Defendant Northwestern could not consider injuries sustained from her fall on July 29, 2016, because the Plan did not cover her at that time. *See Mem. in Opp. to Pl.'s Mot. for Summ. J.*, ECF No. 13, at 9–16. The Court agrees with Defendants.

Section 6 of the Plan includes a provision explaining when an employee's insurance ends, and the provision states that insurance terminates "automatically on the earliest of" any one of four different events: (1) non-payment of contributory premium payments, (2) termination of the policy, (3) termination of employment, and (4) the date you cease to be a member. *See* ECF No. 11-1, at 29. Relevant to this case is the fourth possible event: the date you cease to be a member. The Plan makes clear that a special exception exists for this fourth event, specifically stating:

> [I]f you cease to be a Member *because you are not working the required minimum number of hours*, your insurance will be continued during the following periods, unless it ends on one of the dates shown above:

> (1) While you are receiving from your Employer at least the amount of Predisability Earnings in effect immediately before you ceased to be a Member;
> (2) While you are Disabled before the Beginning Date and while benefits are payable;
> *(3) During a leave of absence if continuation of your insurance under the Policy is required by the state mandated family or medical leave act or law*;
> (4) During any other leave of absence approved by your Employer in advance and in writing and scheduled to last the period shown in the Specifications; or
> (5) During an involuntary layoff for up to 18 months while you are paying the entire premium for your insurance to your Employer.

*Id.* at 29–30 (emphasis added).

It is not disputed that Plaintiff ceased to be a member on April 18, 2016, because she was not working the required minimum number of hours. Thus, Plaintiff argues that exception number three above applies. *See Mem. in Opp. to Defs.' Mot. for Summ. J.*, ECF No. 16, at 7–8. Plaintiff asserts that this exception applies to her because: (1) she was on FMLA during her fall on July 29, 2016; and (2) West Virginia Code Section 21-5D-6(b), known as the Parental Leave Act ("PLA"), is such a state mandated family medical leave act. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 12–13.

While the Court agrees that Plaintiff has met the first element of exception three, she has not met the second element. The PLA, which Plaintiff alleges requires continuation of her insurance, does not actually apply to her. The PLA defines an "Employer" as "any department, division, board, bureau, agency, commission or other unit of state government and any county board of education in the state," and states that an "Employee" does not include "[i]ndividuals employed by persons who are not 'employers' as defined by this article." W. Va. Code § 21-5D-2(d); § 21-5D-2 (c)(2)(A). Thus, because a *private* employer is not encompassed by the statute's definition of an "employer," the PLA will not apply to Plaintiff if her former employer—

University Physicians & Surgeons, Inc. d/b/a Marshall Health—is a private employer. Unfortunately for Plaintiff, it is. *See Yoak v. Marshall University Bd. of Governors*, 672 S.E.2d 191, 193 (W.Va. 2008) (holding that University Physicians & Surgeons, Inc. "is a private West Virginia corporation."). Thus, the third exception does not apply to Plaintiff,[5] and Defendant Northwestern acted appropriately in not considering injuries sustained from Plaintiff's fall on July 29, 2016, because the Plan did not cover her at that time.

**2. General Abuse of Discretion**

Plaintiff next argues, in support of her motion for summary judgment, that Defendant Northwestern generally abused its discretion because it reached an unreasonable conclusion to deny her benefits based on her carpel tunnel syndrome, neck pain, and back pain. *See Mem. in Supp. of Pl.'s Mot. for Summ. J.*, at 14–17. Defendants, on the other hand, argue that they are entitled to summary judgment because Defendant Northwestern reached a reasonable conclusion. *See Mem. in Supp. of Defs.' Mot. for Summ. J.*, at 18–24. The Court agrees with Defendants.

Defendant Northwestern did not abuse its discretion in declining to award Plaintiff benefits, as it evaluated various pieces of medical evidence and relied on the medical opinions of two doctors in concluding that Plaintiff had the functional capacity to work as a pathology technician as of April 2016. Specifically, Defendant Northwestern evaluated the following medical records: (1) documents which demonstrate that Plaintiff had no more than mild non-symptomatic carpal tunnel and no radiculopathy;[6] (2) MRI evidence of no acute changes or progression of Plaintiff's

---

[5] Plaintiff never disputes this in her reply brief. *See* ECF No. 20.
[6] *See* ECF No. 11-2, at 94, 96 (a February 9, 2016, nerve conduction study of Plaintiff's left upper extremity that demonstrated only mild carpal tunnel and "no evidence of left cervical radiculopathy."); ECF No. 11-2, at 94, 97, 100 (a May 12, 2015, nerve conduction study of Plaintiff's right upper extremity that showed only "mild residual right carpal tunnel"); ECF No. 11-1, at 138–41 (a January 4, 2017, bilateral electromyography and nerve conduction study that concluded "[t]here is electrophysiologic evidence of very early mild median mononeuropathy across the wrist (carpal tunnel syndrome) bilaterally, without evidence of active denervation on right. There is no electrophysiologic evidence for right radial neuropathy.").

age-related stable degenerative disk disease with which she had worked for years;[7] (3) clinical exam findings of full strength and range of motion;[8] (4) the absence of any specialized treatment for her alleged disabling cervical, lumbar and hand conditions;[9] and (5) the lack of any prescribed pain medication.[10] Additionally, Defendant Northwestern consulted two physicians, Dr. Hart and Dr. Boodin, who analyzed the medical evidence, including MRI and NCS testing and clinical findings, and concluded that Plaintiff did not have any functional limitations that would preclude her from working. *See* ECF No. 11-1, at 58, 153. Moreover, the conclusions reached by Dr. Hart and Dr. Boodin were consistent with the opinion of Dr. Stoll, who physically examined Plaintiff and concluded that she was able to perform repetitive actions with both hands, including grasping, and was able to sit, stand and walk up to 8 hours during a workday. *See* ECF No. 11-2, at 78.

Plaintiff essentially argues that, despite the above facts, Defendant Northwestern abused its discretion when it denied her benefits because there is *some* conflicting evidence which demonstrates that she was disabled. *See Mem. in Opp. to Defs.' Mot. for Summ. J.*, at 2–11. For example, Plaintiff asserts that her treating physician, Dr. Lee, concluded that she would have to be out of work indefinitely. *See id.* at 3. Plaintiff argues that this contradiction exists because one doctor is a "paid physician" and the other is a "treating physician." *Id.* However, Plaintiff ignores the fact that Dr. Lee's determination came as a result of the injuries Plaintiff suffered in her July 2016 fall, which the Court already concluded was appropriate for Defendant Northwestern to ignore. *See* ECF No. 11-1, at 145.

Additionally, Plaintiff alleges that Dr. Hart and Dr. Boodin did not "reference an MRI dated October 6, 2006," which concluded that there was "mild to moderate central canal narrowing

---

[7] *See* ECF No. 11-2, at 53.
[8] *See* ECF No. 11-1, at 76, 124, 135.
[9] *See* ECF No. 11-1, at 135; ECF No. 11-2, at 81
[10] *See* ECF No. 11-2, at 66, 102–03.

at L4-5 secondary to disc bulge, facet degenerative change, and spondylolisthesis." *See Mem. in Opp. to Defs.' Mot. for Summ. J.*, at 9. However, given that Plaintiff first claimed a disability almost a decade after this 2006 MRI, it stands to reason that more recent MRIs, which Defendant Northwestern did review,[11] would be more relevant in deciding whether Plaintiff was *now* disabled and unable to work. As to Plaintiff's assertion that this missing MRI is evidence that Dr. Hart and Dr. Boodin may have "ignored" other evidence, the Court finds this unpersuasive. Given the medical evidence that Defendant Northwestern, Dr. Hart, and Dr. Boodin indisputably reviewed, this Court cannot hold that Defendant Northwestern's decision was unreasonable merely because there are other records, not even identified to this Court, that they *may* have ignored.[12]

Finally, Plaintiff argues that Defendant Northwestern's conflict of interest should result in a finding that it abused its discretion and reached an unreasonable conclusion. *See Mem. in Opp. to Defs.' Mot. for Summ. J.*, at 11. The Court disagrees. Even if Defendant Northwestern did have a conflict of interest, as the Fourth Circuit clarified, a conflict of interest is only one factor among many in determining the reasonableness of the administrator's decision. The Court finds that Defendant Northwestern based its decision on various medical records, and the content of those medical records could result in a reasonable determination that Plaintiff was not disabled. Additionally, Defendant Northwestern relied on not one, but two doctors' opinions. While those opinions were from doctors who did not treat Plaintiff, it is certainly appropriate to rely on the opinion of non-treating physicians in ERISA cases. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (holding that it is appropriate to rely on a consulting physician, and that both consulting *and* treating physicians have biases). Additionally, there is no evidence that

---

[11] *See, e.g.*, ECF No. 11-2, at 53.
[12] The Court also notes that a failure to reference a single medical record that is nearly a decade old does not establish that either Defendant Northwestern, or the doctors it relied on, "ignored" evidence.

Defendant Northwestern violated any of the procedural requirements of ERISA. In fact, it voluntarily conducted an *additional* review of Plaintiff's claim, after a lawsuit was filed, in order to ensure that its decision was sound. Thus, despite Defendant Northwestern's conflict of interest, the Court finds that it did not even reach an improper conclusion in determining that Plaintiff was not entitled to benefits, let alone abuse its discretion.

## IV. Conclusion

Based upon the analysis provided above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 13), **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 12), and **REMOVES** this action from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 27, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE